**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---------------------------------------------------------------- x

DETERRANCE SMITH                                    :
                                                    :
                    Plaintiff,                      :
                                                    :
        v.                                          :        3:25-CV-02085 (SFR)
                                                    :
STATE OF CONNECTICUT,                               :
                                                    :
                    Defendant.                      :

---------------------------------------------------------------- x

**INITIAL REVIEW ORDER**

Plaintiff DeTerrance Smith brings this complaint against the State of Connecticut and various state agencies and offices, alleging constitutional violations resulting from the structure of the Connecticut criminal justice system. For the reasons that follow, Smith's Complaint is dismissed with leave to amend and his pending motions are denied.

I.      **BACKGROUND**

    A.      **Factual Background**

Smith's Complaint, ECF No. 1, contains little in the way of facts about his personal situation. Instead, it broadly alleges structural deficiencies in Connecticut's criminal justice system. Smith argues that the State's simultaneous funding of law enforcement, courts, prosecutors, and public defenders is an unconstitutional conflict of interest. Compl. 2-6.

From the facts included in his Complaint, it would appear that Smith has been arrested multiple times and had several cases before courts in the State of Connecticut. *Id*. at 4-5. He alleges that the State is targeting and harassing him with arrests in retaliation for his civil rights complaints against the State, that his public defender pushed him to take a plea deal he did not want, that state court judges committed him to Whiting Forensic Hospital for competency

1

restoration on multiple occasions, and that state disciplinary processes failed to right these wrongs. *Id.* at 2-6.

### B.      Procedural History

Smith filed the Complaint in this action on December 12, 2025. Compl. On January 8, 2026, Smith filed two motions. ECF No. 9. On January 20, 2026, I denied those motions and ordered Smith to file a Motion for Leave to Proceed *in forma pauperis* in this and several of his other cases. ECF No. 10.

On February 9, 2026, Smith filed a Motion for Federal Intervention, Declaratory Relief, and to Vacate State Court Orders, ECF No. 11, and an Emergency Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 12, both of which seek injunctive and declaratory relief against ongoing state criminal prosecutions. On February 23, 2026, I ordered the clerk to file Smith's motion for leave to proceed *in forma pauperis* from another of his pending cases in this case, ECF Nos. 13, 15, and on March 6, 2026, granted that motion, ECF No. 16. On April 17, 2026, I ordered Smith to show cause why this case should not be dismissed pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). ECF No. 17.

## II.      LEGAL STANDARD

Under 28 U.S.C. § 1915, the Court is authorized to grant *in forma pauperis* status to an indigent plaintiff who submits an affidavit demonstrating their inability to pay the required filing fee. 28 U.S.C. § 1915(a)(1). Subsection 1915(e) provides that the Court "shall dismiss the case at any time if [it] determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A valid complaint need not plead "detailed factual allegations," but it must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2). A claim is plausible on its face where the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated differently, the complaint needs to "disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

"*Pro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)).

## III.    **DISCUSSION**

Smith brings several broad categories of claims.[1] First, he alleges that the structure of Connecticut's criminal justice system is a violation of the Fourteenth Amendment. Compl. 4-5. Second, he alleges that the state falsely arrested and harassed him after he filed complaints against detectives and police officers. *Id.* at 4-5. Third, he alleges that the state defamed him. *Id.* Finally, he alleges that he was forcibly medicated during a competency restoration process.

---

[1] Smith alleges five claims for relief, which do not neatly map onto his Complaint as written. *See* Compl. 6 (alleging five counts, including "14 Amendment Due Process," "6th Amendment Right to Conflict free counsel," "5th Amendment Coerced Plea Violation," "First Amendment Retaliation," and "Systemic Structural Conflict of Interest"). However, I liberally construe his Complaint to state the strongest claims it suggests based on the facts he has alleged. *See Triestman*, 470 F.3d at 474.

3

*Id.* at 6. Smith seeks injunctive and declaratory remedies in his Complaint and motions, including that a variety of state and local entities be prohibited from arresting him "without documented probable cause," "[h]arassing or [i]ntimidating him," retaliating against him, forcing him into competency restoration processes or medicating him, and pulling his vehicle over "without[] crime b[e]ing committ[ed]." *Id.* at 7. He also requests that the state court orders relating to his competency be declared unconstitutional, that I enjoin enforcement of those orders, that I "prohibit further state court proceedings" against him, and that I order reassignment or recusal of certain state judges assigned to his cases. ECF No. 11, at 4.

## A.     Structure of the Connecticut Criminal Justice System

Smith argues that the entire Connecticut state criminal justice system is unconstitutional. He argues that (1) the process of charging an individual with a crime is unconstitutional because "the police, prosecutor, and judge have all acted as an aligned state machine . . . without the defendant present," Compl. 2, and (2) that all state public defenders are fundamentally conflicted because they are paid by the State, *id.* at 3. Smith asks the court to respond by ordering that a number of entities, including state and local law enforcement, the Department of Children and Families, Adult Probation, the state prosecutor, the "judicial system," and "any state entity," be prevented from enforcing the law with respect to Smith, including both ongoing cases and apparently any future interactions with the justice system. *Id.* at 7; ECF No. 11, at 4. He also argues that the state criminal competency evaluation and restoration processes are broadly unconstitutional because they are designed to "[c]ondition defendant[s] to accept guilty pleas." Compl. 6.

To the extent that Smith asks this court to intervene in ongoing cases, such relief is clearly precluded by *Younger v. Harris*, 401 U.S. 37 (1971). Under *Younger*, federal courts

4

should abstain from exercising jurisdiction "only in three exceptional circumstances involving (1) ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Cavanaugh v. Geballe*, 28 F.4th 428, 432 (2d Cir. 2022). Before invoking *Younger*, a federal court may "'appropriately consider[]' three additional factors . . . that further counsel in favor of abstention: Whether 'there is (1) an ongoing state judicial proceeding [that] (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges.'" *Id.* (alteration in original) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013)).

Smith indicates that his allegations relate to ongoing state criminal proceedings. ECF No. 12, at 2. He argues that *Younger* does not apply "where state proceedings are conducted in bad faith or for purposes of harassment," *Id.* at 4, but beyond this conclusory restatement of the law, he has not identified any bad faith or purpose of harassment on the part of the state judiciary, nor has he identified any other circumstances that implicate any exception to the *Younger* rule. Therefore, to the extent that Smith's Complaint asks me to intervene in his ongoing state criminal cases, I abstain from doing so under *Younger*.

Additionally, because both of Smith's motions request that I enter preliminary injunctive relief to halt ongoing court proceedings, ECF No. 11, at 4; ECF No. 12, at 4, 6, both motions are also barred by *Younger*.

Even if these claims were not barred under *Younger*, I find no basis for granting Smith the systemic relief he appears to seek. Smith alleges that it is unconstitutional *per se* for any police officer to accuse a citizen of a crime, any prosecutor to charge those crimes, or any judge to issue a warrant because each step was done without the defendant present. Compl. 2.

5

He alleges in conclusory fashion that the State is "structurally incapable of policing it's own misconduct" because he filed complaints against these various state actors and no action was taken. *Id.* at 4. He also argues that the criminal competency system is fundamentally flawed because, he alleges, it is designed to force criminal defendants to plead guilty. *Id.* at 6. I have found no authority for holding these actions and systems *per se* unconstitutional.

Smith's claim that public defenders are inherently conflicted because they are paid by the State has been expressly rejected by the Second Circuit. "The Second Circuit has held with respect to the State of Connecticut's public defender system 'that even though the Public Defender is appointed by the same judges who will hear the cases in which he participates, and even though those same judges fix the Public Defender's salary and term of office, the . . . system is not violative of due process.'" *United States v. Sweeney*, 05-cv-01655 (JBA), 2006 WL 2864709, at *4 (D. Conn. Oct. 6, 2006) (quoting *United States ex rel. Reid v. Richmond,* 277 F.2d 702, 703 (2d Cir. 1960)). Smith has not alleged that his public defender had some specific conflict of interest, and I decline to hold that the public defender system is unconstitutional because it is funded by the State.

I thus deny Smith's claims relating to the overall structure of the Connecticut criminal justice system.

### B.    False Arrest

Smith alleges that after he "filed complaints against detectives and officers, Connecticut retaliated by false arresting him 14 times" to "stop him from moving forward on civil claim" and "cause a dismissal [i]n Deterrance Smith v. Sanchez," and that all of the cases resulting from his 14 arrests were "nolle and dismissed, proving there was never legitimate

probable cause." Compl. 4. He further alleges that the State continues to "target[] him" by harassing him and falsely arresting him. *Id.* at 5.

### 1.    False Arrest

The Second Circuit has held that false arrest claims asserted under § 1983 "are 'substantially the same' as claims for false arrest under state law." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003)). To state a false arrest claim under § 1983 in Connecticut, a plaintiff must not only plead facts to satisfy the elements of a false arrest claim under Connecticut law but must also plead facts to demonstrate "an unreasonable deprivation of liberty in violation of the Fourth Amendment." *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012) (summary order).

"Under Connecticut law, false arrest and false imprisonment claims require pleading and proof of the same four elements." *Arpino v. Spera*, No. 22-cv-01114 (KAD), 2022 WL 21751856, at *4 (D. Conn. Sept. 22, 2022). "The elements of such a claim under Connecticut law are: (1) the defendant arrested plaintiff or had plaintiff arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent for the arrest; and (4) the arrest was not supported by probable cause." *Chase v. Nodine's Smokehouse*, Inc., 360 F. Supp. 3d 98, 112 (D. Conn. 2019). A plaintiff asserting this claim must also prove that there was a favorable termination of the proceedings against him. *See Miles v. City of Hartford*, 445 F. App'x 379, 382-83 (2d Cir. 2011) (summary order) (citing *Roesch v. Otarola*, 980 F.2d 850, 852-54 (2d Cir. 1992)) (noting favorable termination is an element of a § 1983 claim "sounding in false imprisonment or false arrest" under Connecticut law). A "favorable termination" means that a plaintiff must show that his "prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 39 (2022).

Here, Smith has not alleged specific facts setting forth the details of his alleged false arrests (including when and where the arrests occurred), named the individual officer defendants involved (even as John or Jane Does), or explained how probable cause was lacking for particular charges. Instead, he has included only conclusory allegations that his arrests were false and lacked probable cause. Compl. 4-5. These conclusory statements are insufficient to state a claim for false arrest and fail to provide adequate notice to any defendant of Smith's claim. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[A] principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial."). I therefore dismiss Smith's false arrest claims with leave to amend.

### 2. Retaliation

To the extent that Smith alleges he was arrested in retaliation for filing complaints against public officials, that allegation sounds in the First Amendment. To prevail on a First Amendment retaliation claim, a plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

Here, Smith only alleges in general terms that he was arrested "14 times" to "stop him from moving forward on civil claim," and then mentions a prior civil case that he filed. Compl. 4. While filing a lawsuit is generally considered protected conduct, *see Walker v. Senecal*, 130 F.4th 291, 298 (2d Cir. 2025) ("[T]he filing of a lawsuit . . . is protected conduct."), Smith does not provide any details about the lawsuit, identify specific defendants who took adverse action

8

against him, or sufficiently allege facts showing a plausible causal connection between the protected conduct and the adverse action. I therefore dismiss Smith's retaliation claim with leave to amend.

### C.      Defamation

Smith also claims the State defamed him by charging him with arson in a state case that was "broadcast nationwide" with "zero evidence" and which was ultimately "nolle prosed." Compl. 4-5.

As an initial matter, a plaintiff "may not sue the State of Connecticut for defamation in this court, for the state is entitled to the protections of the Eleventh Amendment to the United States Constitution." *Gonzalez v. Leonard*, 497 F. Supp. 1058, 1077 (D. Conn. 1980). As the State of Connecticut and various state agencies and offices are the only listed defendants, the Eleventh Amendment clearly bars a claim for damages based on defamation.

If Smith amended his complaint to identify individual defendants, he would need to either meet the elements of a constitutional defamation claim or meet the elements of a defamation claim under Connecticut law.

"To sustain a constitutional defamation claim, [the plaintiff] must meet a 'stigma plus' standard, adequately alleging that the defendants have stigmatized his reputation and that there has been an additional injury to a protected liberty or property interest." *Brewer v. Town of W. Hartford*, No. 05-cv-00849 (SRU), 2007 WL 2904207, at *3 (D. Conn. Sept. 28, 2007) (citing *Paul v. Davis,* 424 U.S. 693, 701 (1976)); *see also Patterson v. City of Utica,* 370 F.3d 322, 330 (2d Cir. 2004) ("[l]oss of one's reputation can . . . invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest . . . .").

To state a defamation claim under Connecticut law, a party must plead facts demonstrating that

> (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement.

*Khan v. Yale Univ.*, 27 F.4th 805, 817 (2d Cir. 2022) (quoting *Cweklinsky v. Mobil Chem. Co.*, 837 A.2d 759, 763-64 (Conn. 2004)). A two-year statute of limitations applies to defamation claims under Connecticut law. *See* Conn. Gen. Stat. § 52-597 ("No action for libel or slander shall be brought but within two years from the date of the act complained of."); *see, e.g.*, *Deccan Value LLC v. Malik*, No. FST-CV21-6052725-S, 2025 WL 1379119, at *4 (Conn. Super. Ct. May 7, 2025) ("[U]nder Connecticut law, the statute of limitations for a defamation claim is two years from the date of publication.") (citing Conn. Gen. Stat. § 52-597).

Under both state and federal law, truth is a defense to a claim of defamation. *Brewer*, 2007 WL 2904207, at *4.

Here, Smith has not identified any injury to a protected liberty or property interest, nor has he alleged sufficient facts to show that an individual published defamatory false statements about him. Instead, he has alleged only that there was "zero evidence," that the case was "nolle prosed," and that this alleged "defamation was malicious retaliation." Compl. 5. I therefore dismiss this claim with leave to amend.

### D.    Forcible Medication

Finally, Smith alleges that the State, via Whiting Forensic Hospital, forcibly medicated him during the competency restoration process. *Id.* at 6.

Under the Due Process Clause of the Fourteenth Amendment, an incarcerated individual "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). However, the

> Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests.

*Sell v. United States*, 539 U.S. 166, 179 (2003). As explained by the Court,

> this standard implies the following factors: (1) that important governmental interests are at stake; (2) that involuntary medication will significantly further those concomitant state interests; (3) that involuntary medication is necessary to further those state interests; and (4) that administrations of the drugs is medically appropriate, i.e., in the patient's best medical interest in light of his medical condition.

*United States v. Gomes*, 305 F. Supp. 2d 158, 162 (D. Conn. 2004) (citing *Sell*, 539 U.S. at 180-84).

Smith asserts in broad strokes that the entire competency restoration process is unconstitutional, and notes that he was "directly subjected" to that process. Compl. 6. But he does not allege any specific facts about how, in his case, his Fourteenth Amendment rights were violated and who violated them. I therefore deny Smith's claim with leave to amend.

## IV.    **<u>CONCLUSION</u>**

Smith's Complaint is dismissed in its entirety. Smith's claims related to the overall structure of the Connecticut criminal justice system are dismissed without leave to amend; to the extent that those claims specifically relate to ongoing state criminal prosecutions, they are dismissed under the *Younger* doctrine.

Smith's Motion for Federal Intervention, Declaratory Relief, and to Vacate State Court Orders, ECF No. 11, and Emergency Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 12, are denied under *Younger*.

Smith's claims for false arrest, retaliation, defamation, and forcible medication are dismissed with leave to amend. If Smith believes he can allege facts supporting these claims that address the deficiencies identified in this Order, he may file an Amended Complaint on or before **July 30, 2026**.

**SO ORDERED.**

New Haven, Connecticut
June 30, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

12